UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>        Petitioner,<br><br>    v.<br><br>MOISES BECERRA, et al.,<br><br>        Respondents. | No. 2:25-cv-00647-DJC-DMC<br><br><u>ORDER GRANTING PRELIMINARY INJUNCTION</u> |

      Petitioner John Doe is presently in the custody of United States Immigration and Customs Enforcement ("ICE"). Removal proceedings have been pending against Petitioner since he first entered the United States on July 26, 2019. Following a determination that Petitioner possessed a credible fear of persecution or torture, an Immigration Judge found that Petitioner did not pose a danger to the community and was not a flight risk, and released Petitioner on bond pending full adjudication of his asylum application. Until recently, Petitioner had remained out of custody on bond for over five years, working as a truck driver and actively participating in his community. However, on January 28, 2025, Petitioner was taken into custody during a standard check-in at the Sacramento ICE office. No neutral decisionmaker has determined that Petitioner is now dangerous or poses a risk of flight, and the Government has taken

the position that no such hearing is required. As of the date of this Order, Petitioner remains in the custody of ICE.

Petitioner has filed a Petition for Writ of Habeas Corpus (Pet. (ECF No. 1)) seeking his release and a Motion for Temporary Restraining Order (Mot. (ECF No. 2)) that is presently before the Court.[1] For the reasons stated below, the Court grants Petitioner's Motion and orders that within seven days of this order, Petitioner be granted a hearing before an Immigration Judge where the Government bears the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight.

## I.     Background

Petitioner entered the United States on July 26, 2019, after fleeing his home country. (Pet. ¶¶ 24, 35; Opp'n (ECF No. 8) at 2.) At that time, Petitioner was detained. (*Id.*) Petitioner applied for asylum based on the belief that he was in danger should he return to his country of origin. (Pet. ¶ 35; Opp'n at 2.) In October 2019, an Immigration Judge determined that Petitioner had a credible fear of persecution or torture, thereby permitting Petitioner to seek asylum. (Pet. ¶ 35; Opp'n at 2.) Petitioner was subsequently released from custody on bond on November 8, 2019, after an Immigration Judge found that Petitioner did not present a danger to the community or risk of flight. (Pet. ¶ 37; Opp'n at 2.) Petitioner remained out of ICE custody for over five years until January 28, 2025, when ICE rearrested Petitioner. (Pet. ¶ 4; Opp'n at 3.) In the intervening five years between his release and rearrest, Petitioner has allegedly been gainfully employed as a truck driver. (Pet. ¶ 83.) He has also been an active member of his religious and political community within the United States. (*Id.*; Mot. at 28.) Petitioner states that he is "a recognized leader in the Sikh community in California, where he is doing meaningful work and living a constructive life." (Mot. at 28.)

---

[1] As Petitioner is currently housed at the Golden State Annex located in the Eastern District of California, this Court has jurisdiction and venue is proper. S*ee Doe v. Garland*, 109 F.4th 1188, 1191–92 (2024).

2

At the time of this Order, over a month after he was originally detained, Petitioner remains in the custody of ICE. In that time, he has not received a hearing before an Immigration Judge to determine whether he now presents a danger to the community or a risk of flight.

## II. Legal Standard

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially similar." *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).[2]

## III. Discussion

### A. Request for Mandatory Injunction

As an initial matter, Respondents contend that Petitioner's Motion is inappropriate as it seeks to alter the status quo. Injunctions take two forms: mandatory and prohibitive. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009). Prohibitive injunctions are the more common form of preliminary injunction and grant relief that prohibits a party from taking certain actions and "preserves the status quo" of the case. *Id.* at 878. A mandatory injunction instead "goes well beyond simply maintaining the status quo . . . ." *Id.* at 879. "Mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is

---

[2] Alternatively, courts within the Ninth Circuit may consider a request for a temporary restraining order using a "sliding scale" test in which "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011). Given that Petitioner's request is arguably for a mandatory injunction (*see infra* III.A), and is thus subject to a higher standard, the Court declines to use this alternate framework here.

3

capable of compensation in damages." *Id.* (internal citations and quotation marks omitted).

The Court is not fully convinced that the relief it grants here is a mandatory injunction. The "status quo ante litem" does not mean that the status quo is any situation that precedes a lawsuit. Instead, "[t]he status quo is the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963) (quoting *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7 Cir. 1958)). Petitioner had remained out of custody for over five years until his bond was suddenly revoked. It is questionable whether that status quo is properly considered to be detention when the Government suddenly took an allegedly unconstitutional action in rearresting Petitioner without a hearing. Moreover, the Ninth Circuit has expressed some uncertainty about whether a preliminary injunction in similar circumstances would constitute a mandatory injunction. *Hernandez v. Sessions*, 872 F.3d 976, 998–99 (9th Cir. 2017). However, as the Ninth Circuit did there, the Court here ultimately has no need to reach that issue. Instead, the Court assumes without deciding that the injunctive relief requested does constitute a mandatory injunction.

While mandatory injunctions are subject to a higher standard, that standard is met here. An alleged violation of Petitioner's due process rights and his continued unlawful detention in violation of those rights constitutes extreme or very serious damage that will result in the absence of an injunction. *Id.* at 999. Additionally, as discussed in the following section, the result does not appear to be doubtful either; due process clearly requires that Petitioner be given a hearing before his bond is revoked. *Id.* This is also not an injury capable of monetary compensation. Accordingly, injunctive relief is appropriate even under the higher standard for mandatory injunctions. Moreover, while it may typically be inappropriate to grant relief via preliminary injunction that constitutes most or all of the final relief sought,

there is no mechanism to "temporarily" halt the deprivation of Petitioner's due process rights while the parties litigate the full merits of Petitioner's habeas petition.

The Court will also convert Petitioner's Motion for Temporary Restraining Order into one for preliminary injunction. Respondents had notice, opportunity to respond, and the ability to be heard. There is no benefit in additional briefing and the standard is the same. As such, given the nature of the relief granted by this Order and so as to appropriately permit Respondents the ability to appeal should they choose to do so, the Court converts this to a Motion for Preliminary Injunction. *See Bennett v. Medtronic, Inc.*, 285 F.3d 801, 804 (9th Cir. 2002) ("Ordinarily, temporary restraining orders, in contrast to preliminary injunctions, are not appealable . . . .").

**B. Likelihood of Success on the Merits**

The first *Winter* factor, the likelihood of success on the merits, "is a threshold inquiry and is the most important factor in any motion for preliminary injunction." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (cleaned up). This is especially true where, as here, the moving party alleges a constitutional violation and injury. *Id*. Petitioner has established a likelihood of success on the merits based on the violation of his due process rights.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez*, 872 F.3d at 990. While noncitizens located outside the country are not granted the full protections of the Constitution, the Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings, including final deportation orders. *Id*. at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003) (Recognizing that Fifth Amendment due process protections

extend to deportation proceedings but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process.").

Petitioner is a noncitizen who has been present inside the United States for over five years. As a person inside the United States, Petitioner is entitled to the protections of the Due Process Clause. *See Zadvydas*, 533 U.S. at 693. The Court must first consider whether Petitioner has a liberty interest in light of Petitioner's prior release on bond and the command of 8 U.S.C. § 1225(b)(1)(B)(ii) that noncitizens petitioning for asylum are subject to mandatory detention. If Petitioner possesses a cognizable liberty interest, the Court must evaluate what procedure is due under the framework provided by *Mathews v. Eldridge*, 424 U.S. 319 (1976).

**1. Liberty Interest**

Petitioner concedes that under 8 U.S.C. § 1225(b)(1)(B)(ii) of the Immigration and Naturalization Act ("INA"), he is subject to mandatory detention pending a determination of his asylum claim. Respondents appear to assert that in light of this mandatory detention, Petitioner has no right to release and that his continued detention is thus permissible.

To begin, the Court notes that the Ninth Circuit has raised significant questions about the constitutionality of section 1225(b). In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court held that the canon of constitutional avoidance had been misapplied to read a right to periodic bond hearings into several sections of INA, including section 1225(b)(1)(B)(ii). The Court did not reach the issue of the constitutionality of those sections of the INA and remanded to the Ninth Circuit to consider that issue. *Id.* at 312. On remand, the Ninth Circuit further remanded to the trial court but, in doing so, indicated it had serious ongoing concerns about the constitutionality of these provisions:

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary

6

>             deprivation of liberty would have thought so. Arbitrary civil
>             detention is not a feature of our American government.
>             Liberty is the norm, and detention prior to trial or without trial
>             is the carefully limited exception.

*Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018).

The District Court for the Western District of Washington has directly considered the constitutionality of section 1225(b)(1)(B)(ii) on several occasions in the *Padilla* case and, in doing so, repeatedly expressed serious doubts about the constitutionality of that section.[3] Most recently, Judge Pechman determined that asylum seekers have a right to bond hearings, concluding that "Due Process protects against immigration decisions detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." *ICE v. Padilla*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) (citing *Zadvydas*, 533 U.S. at 690–94). In concluding that noncitizens who had expressed a credible fear were eligible for bond notwithstanding section 1225(b), the district court distinguished *Demore v. Kim*, 538 U.S. 510 (2003), in which the Supreme Court rejected a due process challenge to mandatory detention of noncitizens who had committed certain crimes, including aggravated felonies. Judge Pechman concluded that, compared to the class of noncitizens at issue in *Demore* for which "the voluminous Congressional record . . . justified denying bail given the substantial rate at which such individuals either reoffended or absconded," there were "no similar public safety concerns or flight risk that might apply to those, like Plaintiffs, with bona fide asylum claims and who desire to remain in the United States." *Padilla*, 704 F. Supp. 3d at 1173 (citing *Demore*, 538 U.S. at 518–20). The district court also relied on

---

[3] In 2019, the court issued a modified preliminary injunction concluding that asylum seekers were constitutionally entitled to a bond hearing before a neutral decisionmaker. *Padilla v. ICE*, 387 F. Supp. 3d 1219, 1232 (W.D. Wash. 2019), *aff'd*, 953 F.3d 1134 (9th Cir. 2020). The Supreme Court granted certiorari, vacated the decision, and remanded the matter to the Ninth Circuit for further consideration in light of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). *ICE v. Padilla*, 141 S.Ct. 1041 (2021).

7

information before it that the length of detention for asylum seekers was much longer than that at issue in *Demore*. *Padilla*, 704 F. Supp. 3d at 1173. More directly, Judge Pechman also found that asylum seekers had adequately alleged a due process claim given that they had a liberty interest in freedom from confinement and there were not adequate procedures in place to test the legitimate need for continued detention. *Id.* at 1174.

Many of the due process issues underlying the district court's decision in *Padilla* apply with even greater force to Petitioner. Whatever concerns for public safety or flight risk that might exist for a class of individuals seeking asylum who have been determined to have a credible fear, that risk is reduced further in the specific case of Petitioner. Significantly, an Immigration Judge has already determined that Petitioner is not a danger to the community or likely to flee. That determination has largely borne out: while Petitioner was arrested for violating California Vehicle Code section 10851(a) for taking a Semi Trailer without the consent of his employer, those charges were dismissed after Petitioner successfully completed a diversion program, and Petitioner has consistently made his scheduled status conferences with the Immigration Judge with only one exception where he was hospitalized at the time of the hearing. Additionally, Petitioner was also the subject of an INTERPOL "Red Notice" received by ICE in 2023 but many sources, including Congress, have noted serious reliability issues with Red Notices. *See* 22 U.S.C. § 263b(a) ("It is the sense of Congress that some INTERPOL member countries have repeatedly misused INTERPOL's databases and processes, including Notice and Diffusion mechanisms, to conduct activities of an overtly political or other unlawful character and in violation of international human rights standards, including by making requests to harass or persecute political opponents, human rights defenders, or journalists."). While the government must be provided an opportunity to show that Petitioner is a danger to the community or likely to flee, the record here demonstrates that the concerns of

Congress in enacting section 1125(b) do not justify Petitioner's indefinite detention in his particular case without appropriate procedures to protect his liberty interest.

Moreover, the actions of the Government in allowing Petitioner to remain in the community for over five years strengthen Petitioner's liberty interest. Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause. *See Bd. of Pardons v. Allen,* 482 U.S. 369, 371 (1987). The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding a parolee had an interest in his continued liberty); *Young v. Harper*, 520 U.S. 143, 150 (1997) (applying *Morrissey* to pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (finding probationers have a liberty interest). Petitioner, having been released at a bond hearing over five years ago, has a similar liberty interest. *See Jorge M.F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. March 1, 2021) (holding that a Mexican citizen with pending removal proceedings who had been released on bond had "a substantial private interest in remaining on bond." (internal citation and quotation removed)); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

Accordingly, Petitioner has established a strong likelihood of success in showing that he has an interest in his continued liberty and that mandatory detention under section 1225(b)(1)(B)(ii) would violate his due process rights unless he is afforded adequate process.

**2. Procedural Due Process**

To determine what process is due, the Court considers three factors: (1) "the private interest that will be affected by the official action[,]" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[,]" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would

entail." *Mathews* 424 U.S. at 335.  Applying the three factors as described in *Mathews v. Eldridge,* the Court concludes a hearing before an Immigration Judge is required to continue to detain Petitioner.

It cannot be gainsaid that Petitioner has a substantial private interest in maintaining his out-of-custody status.  Freedom from imprisonment is at the core of the Due Process Clause.  *Zadvydas*, 533 U.S. at 690.  Petitioner has remained out of custody on bond for over five years.  During that time, he appears to have been gainfully employed as a truck driver and been an active member of his community.  (Pet. ¶¶ 82–83.)  The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.

The risk of erroneous deprivation is also considerable in this case.  Petitioner was previously released on bond after it was determined he was not a danger to the community or a flight risk.  While Respondents argue that there has been a change in circumstances, many if not all of these changes seem to substantially predate Petitioner's present detention and may have been known by ICE and the Immigration Court for some time. (*See* Opp'n at 2–3; *see also* Mot. at 7.)  The Immigration Court may ultimately determine that Petitioner now presents a danger to the community or risk of flight, and the Court expressly makes no finding as to whether or not detention is warranted under that standard and expresses no opinion on that issue.  However, given that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high.  Moreover, the value in granting Petitioner procedural safeguard is readily apparent.  At a hearing, a neutral decisionmaker can consider all of the facts and evidence before him to determine whether Petitioner in fact presents a risk of flight or dangerousness.  The reliability and significance of the alleged changes in circumstance that Respondents identify can be weighed and Petitioner's liberty interests can be protected.

The final *Mathews* factor is simple as the Government's interest in placing Petitioner in detention without a hearing is low. *Ortega*, 415 F. Supp. 3d at 970; *see Hernandez*, 872 F.3d at 994. The effort and cost required to provide Petitioner with procedural safeguards is minimal and indeed was previously provided in his case. Such safeguards were also provided to many others under the formerly applicable decision of *In re X-K-*, 23 I. & N. Dec. 731 (B.I.A. 2005). Any additional burden does not outweigh Petitioner's substantial liberty interests and the risk of erroneous deprivation.

* * * *

Having found Petitioner has a liberty interest and determined, via the *Mathews* factors, that due process requires Petitioner receive a hearing to determine whether detention is warranted, the Court finds that Petitioner has established a likelihood of success on the merits.[4]

**C. Irreparable Harm**

Petitioner will suffer irreparable harm in the absence of preliminary injunctive relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)). Despite Petitioner previously remaining out of custody for many years prior to his rearrest, he is now in ICE custody and has not been afforded the opportunity to be heard by a neutral decisionmaker on whether detention is warranted. Absent such review, it appears that Petitioner will indefinitely remain in custody until final adjudication is

---

[4] At oral argument, Respondents placed emphasis on the argument found in the Opposition that Petitioner should be required to seek a bond hearing before seeking relief from this Court. Parties were permitted to file supplemental authority on this issue. Having considered the Parties' argument and authority the Court is not persuaded by Respondents' argument. All parties have agreed that 8 U.S.C. § 1225(b)(1)(B)(ii) applies mandatory detention to Petitioner. Forcing Petitioner to first seek bond review when it is clear this request will be denied based on the Attorney General's decision in *Matter of M-S-* does not serve any purpose besides keeping Petitioner in custody for a longer period without due process. *See Hernandez*, 872 F.3d 988 (describing situations where prudential exhaustion may be required before a habeas petition may be filed). As the Government concedes (ECF No. 15), any exhaustion requirement is prudential in nature, and the Court declines to impose one in this case.

reached on his asylum application. This violation of Petitioner's due process rights is sufficient to satisfy the irreparable harm requirement.

### D. Balance of the Equities and Public Interest

The final two *Winter* factors merge when the government is the nonmoving party. *Baird*, 81 F.4th at 1040. Public interest concerns are always implicated as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotations and citations omitted). "The government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042 (internal quotations and citations omitted). Given that this Court has found that Petitioner has a strong likelihood of success on the merits based on his constitutional claims and the Government's inability to assert any harm, the balance of equities and public interest weighs in Petitioner's favor.

## IV. Procedural Issues

### A. Proper Respondent

Where an individual brings a "core" habeas petition challenging present physical confinement, the immediate custodian rule states that the proper respondent is the immediate custodian. *Doe*, 109 F.4th at 1197. This rule applies to immigrant detainees who must also name their immediate custodian. *Id.* Here, Petitioner's immediate custodian is the Facility Administrator of the Golden State Annex, *see id.*, who has been properly named in this action. Should Respondents seek to dismiss the remainder of the Respondents from this action, they should do so pursuant to a properly noticed motion.

### B. Request to Seal and Proceed under Pseudonym

The Court grants Petitioner's request to proceed under a pseudonym and seal all documents containing his name. "The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010); *see also* Fed. R. Civ. P. 10(a) ("[t]he

title of the complaint must name all the parties"); Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."). However, it is common for courts to permit parties to proceed under a pseudonym where there is a threat that an individual will suffer retaliation from third parties. *See Does I thru XXIII v. Advanced Textile*, 214 F.3d 1058, 1067 (9th Cir. 2000) ("[T]his court and others have concealed parties' identities in order to protect them from retaliation by third parties and also to protect nonparties from reprisals."). Petitioner has presented evidence of both the severity of the threatened harm and the reasonableness of his fears. Given Petitioner is still at risk of removal should his asylum application be denied, he is also acutely vulnerable to retaliation. There is no prejudice to Respondents here – Petitioner's identity is fully known to the Court and Respondents – and the public interest in knowing Petitioner's identity is minimal and outweighed by Petitioner's need for anonymity. The public's interest is not best served by knowing Petitioner's identity. Accordingly, Petitioner's request to proceed under a pseudonym is granted and all documents containing Petitioner's name shall be sealed. *See id.* at 1068–69 (stating the standard for permitting a party to proceed under pseudonym to shield them from retaliation). The Court grants Petitioner's request to seal documents containing Petitioner's name on this same basis.

Additionally, any information related to Petitioner's asylum application shall be filed under seal due to its potential to identify Petitioner and the sensitive nature of the allegations. While there is a strong presumption in favor of access to public records, for the same reasons stated above, Petitioner has articulated compelling reasons that outweigh the general history of access and the public policies favoring disclosure. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006). All past filings containing such information shall be sealed and all future filings containing

such information shall be filed using the process described in the Court's standing order.[5]

### C. Referral of this Matter to a Magistrate Judge

In their Opposition, Respondents suggest that Petitioner seeks to "by-pass the Magistrate Judge deliberative process of routine processing of similar matters" and in concluding their Opposition state that "this district court properly must order the matter calendared before a Magistrate Judge for further proceedings on the underlying petition." While habeas matters in this district are generally referred to a Magistrate Judge, *see* Local Rule 302(c)(17), the decision of whether to refer a matter or withdraw the reference is expressly at the discretion of the District Judge assigned to the action. *See* Local Rule 302(d) ("Notwithstanding any other provision of this Rule, a Judge may retain any matter otherwise routinely referred to a Magistrate Judge."). Moreover, while not memorialized in the Local Rules, it has been the practice in this District that when a party seeks a temporary restraining order at the opening of a case, that motion and related matters are handled by the assigned District Judge. This is because the objection period necessitated by the issuance of findings and recommendations would substantially hinder a party's ability to obtain a temporary restraining order where, as here, preliminary injunctive relief is warranted. Petitioner's Motion is properly before this Court.

### V.  Conclusion

In accordance with the above, IT IS HEREBY ORDERED that Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is converted to a Motion for Preliminary Injunction and GRANTED. The Court finds that Petitioner is entitled to a hearing before an Immigration Judge to determine whether his detention is warranted. At this

---

[5] The Court notes that in opposing this request, Respondents erroneously stated that this matter is under seal pursuant to Local Rule 141. This is incorrect. This matter is not under seal and Local Rule 141 does not provide for automatic sealing of immigration actions. As noted by Petitioner, access to civil immigration cases such as this one is restricted, but documents are still viewable by the public via public terminals.

hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.  Respondents are ordered to provide Petitioner with such a hearing on or before March 10, 2025, if no hearing occurs by this time, Petitioner shall be released from Respondents' custody.

IT IS SO ORDERED.

Dated:   **March 3, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE